**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X          **Docket No.: 1:21-cv-4426**
LEROY JONES,

                         Plaintiff,                                    **COMPLAINT**

-*against*-

                                         ***PLAINTIFF DEMANDS***
HEALTHFIRST, INC., GRACE SANTOS, *Individually*          ***A TRIAL BY JURY***
*and in Her Official Capacity*, and ELAINE VARGAS,
*Individually and in Her Official Capacity*,

                         Defendants.
------------------------------------------------------------------X

        Plaintiff, LEROY JONES, by and through his attorneys, PHILLIPS & ASSOCIATES,

Attorneys at Law, PLLC, against HEALTHFIRST, INC., GRACE SANTOS, individually and in

his official capacity, and ELAINE VARGAS, individually and in her official capacity, (together,

"Defendants") alleges upon knowledge as to himself and his own actions and upon information

and belief as to all other matters as follows:

### NATURE OF THE CASE

1.     This is a civil action based upon Defendant's violations of Plaintiff's rights guaranteed to

        him by: (i) the race discrimination and retaliation provisions of the **Title VII of the Civil**

        **Rights Act of 1964**, as amended ("Title VII"); (ii) the race discrimination and retaliation

        provisions of **42 U.S.C.** § 1981 ("Section 1981"); (iii) the race discrimination and

        retaliation provisions of the **New York State Human Rights Law**, New York State

        Executive Law, § 296 et seq. ("NYSHRL"); (iv) the race discrimination and retaliation

        provisions of the **New York City Human Rights Law**, New York City Administrative

        Code § 8-107 et seq. ("NYCHRL"); and (vi) any other claim(s) that can be inferred from

        the facts set forth herein.

2.     Plaintiff seeks redress for the injuries he has suffered as a result of his employer's

**discrimination and retaliation** solely on the basis of his race (Black).

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331

and 1343.

4.      The Court has supplemental jurisdiction over the claims of Plaintiff brought under state

law pursuant to 28 U.S.C. §1367.

5.      Venue is proper in this district in that a substantial part of the events or omissions giving

rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C.

§ 1391(b).

## PROCEDURAL PREREQUISITES

6.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") upon which this Complaint is based.

7.      Plaintiff received a Notice of Right to Sue from the EEOC dated February 16, 2021, with

respect to the instant charges of discrimination.  A copy of the Notice is annexed to this

Complaint.

8.      This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

9.      Prior to the commencement of this action, plaintiff served a copy of this complaint upon

the New York City Commission on Human Rights and the Corporation Counsel of the City

of New York on May 17, 2021, in accordance with N.Y.C. Admin. Code §8-502(c).

## PARTIES

10.     Plaintiff LEROY JONES ("Plaintiff") is an African-American man and a resident of the

State of New York, New York County. At all relevant times herein, Plaintiff was an

employee of Defendant HEALTHFIRST, INC.

11.     At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to

protection as defined by state and federal laws.

12.    At all relevant times herein, Defendant HEALTHFIRST, INC. ("HEALTHFIRST") was and is a New York not-for-profit corporation.

13.    At all relevant times herein, Defendant GRACE SANTOS ("SANTOS") was employed by Defendant HEALTHFIRST as Director, Medicare Sales in Manhattan. In her role with Defendant HEALTHFIRST, Defendant SANTOS directly supervised certain employees, including Plaintiff. Additionally, Defendant SANTOS had the authority to affect the terms and conditions of Plaintiff's employment. Defendant SANTOS is being sued herein in her official and individual capacities.

14.    At all relevant times herein, Defendant ELAINE VARGAS ("VARGAS") was employed by Defendant HEALTHFIRST as District Sales Manager for Washington Heights. In her role with Defendant HEALTHFIRST, Defendant VARGAS directly supervised certain employees, including Plaintiff. Additionally, Defendant VARGAS had the authority to affect the terms and conditions of Plaintiff's employment. Defendant VARGAS is being sued herein in her official and individual capacities.

15.    At all relevant times herein, Defendant HEALTHFIRST "employs" fifteen and thus four or more "employees," and is thus an "employer" within the meaning of Title VII, Section 1981, the NYSHRL, and the NYCHRL.

## FACTUAL ALLEGATIONS

16.    In or about April 2005, Defendant HEALTHFIRST hired Plaintiff as a Medicare Marketing Representative. In that position, Plaintiff earned an annual salary plus commissions of between $120,000 and $130,000.

17.    As a Medicare Marketing Representative, Plaintiff's duties included marketing and selling medical insurance provided by Defendant HEALTHFIRST.

18.   Plaintiff consistently received positive reviews of his work performance, which met or exceeded the reasonable expectations of Defendant.

19.   Throughout his employment with Defendant HEALTHFIRST, Plaintiff was consistently subjected to disparate treatment on account of his race by his supervisors, Defendants SANTOS and VARGAS.   When he complained about the discrimination, he was threatened and eventually terminated.

20.   Throughout his employment with Defendant HEALTHFIRST, Plaintiff learned and understood that Defendant HEALTHFIRST treated Black employees less well than their Hispanic and White counterparts.   In this respect, Plaintiff has observed managers and directors of Defendant HEALTHFIRST systematically rid themselves of Black employees by assigning them to less favorable sales locations while at the same time providing favorable sites to Latino employees with less seniority.

21.   Throughout his employment with Defendant HEALTHFIRST, Plaintiff learned and understood from at least ten (10) other Black employees of HEALTHFIRST that those ten (10) Black employees were also discriminated against.   During his employment with HEALTHFIRST, Plaintiff learned that Defendant HEALTHFIRST is a serial defendant of lawsuits alleging discrimination and retaliation.

22.   Defendants SANTOS and VARGAS wanted to rid themselves of the Plaintiff as the only remaining African-American Marketing Representative in the Division and attempted to reduce Plaintiff's production by giving him less favorable sales locations and by consistently approving requests from Latino Marketing Representatives to market at Plaintiff's designated locations while at the same time refusing to allow Plaintiff to market at the preferred locations of those Latino Marketing Representatives.

23.   On several occasions, Plaintiff spoke to his direct manager, Faiz Kareem ("Kareem"), about the bias against him as an African-American in favor of Latino Marketing Representatives. Kareem responded by telling Plaintiff that he should know that Defendants SANTOS and VARGAS protect Latino Marketing Representatives and could not care less about an African-American.

24.   Kareem pointed out that Plaintiff was the only African-American on his team and the only African-American in Defendant SANTOS' Division, which covers the diverse and heavily populated New York City boroughs of Manhattan and the Bronx.

25.   Plaintiff explained to Kareem that the disparate treatment he received put him at a disadvantage relative to Latino Marketing Representatives and negatively affected his earnings. Kareem suggested that Plaintiff email Defendant VARGAS about his concerns.

26.   In or about September of 2018, Plaintiff emailed Defendant VARGAS asking why her Latino Marketing Representatives were allowed to market at Plaintiff's site while Plaintiff was not permitted to market at theirs. Plaintiff also asked why Latino Representatives were permitted to choose the dates and times that they wanted to be at Plaintiff's preferred locations while Plaintiff could not.

27.   Defendant VARGAS never responded to Plaintiff's email. However, Defendant SANTOS called Plaintiff a few minutes after he sent his email and told Plaintiff that his email complaint was disrespectful and warned Plaintiff not to send such emails in the future "because they leave trails."

28.   On March 22, 2019, Plaintiff spoke to Defendant SANTOS at a divisional meeting in Queens about his discriminatory treatment. Defendant SANTOS responded by pointing out that Plaintiff was the only African-American left on her team and, therefore, he should be careful.

29.     Defendant SANTOS flooded the area under Plaintiff's responsibility with other Medicare Marketing Representatives, all of whom are Latino, thereby creating internal competition and reducing his production.

30.     Defendant SANTOS told Plaintiff that the Latino Marketing Representatives were her and the company's priority and there was nothing Plaintiff could do about it.

31.     Defendant SANTOS told Plaintiff that he should quit his job since he would eventually be fired like the other African-Americans who had been employed with Defendant HEALTHFIRST in Defendant SANTOS' Division.

32.     Defendant SANTOS told Plaintiff that "we are not hiring your type anymore" and "every time you open your mouth, you are one step closer to the door."

33.     Defendant SANTOS pointed out to Plaintiff that she did not hire African-Americans and that Plaintiff had been hired before she began working for Defendant HEALTHFIRST.

34.     In or about October 2018, Plaintiff spoke to his supervisor, Faiz Kareem ("Kareem"), District Sales Manager regarding a vacation to Paris that he planned to take from July 31, 2019 to August 23, 2019 since he needed to make travel arrangements well in advance.

35.     Kareem assured Plaintiff that he could proceed with making his travel plans and verbally approved Plaintiff's request for time off.

36.     Kareem noted to Plaintiff that two Medicare Marketing Representatives had taken time off without prior approval and expressed appreciation that Plaintiff had reached out to him early with his request.

37.     In June 2019, Kareem told Plaintiff that Defendant SANTOS was giving him a hard time and directed him not to approve Plaintiff's requested vacation time.

38.     When Plaintiff questioned why Defendant SANTOS did not want his vacation time approved since his time off would be taken during the slow season, Kareem replied that,

although he had verbally approved Plaintiff's vacation, Defendant SANTOS insisted that he deny it.  By this time, Plaintiff had already booked his airline tickets and hotel room for his trip.

39.   Plaintiff reminded Kareem that two Marketing Representatives had taken weeks off without authorization while Plaintiff had approached Kareem months before making any travel arrangements.

40.   Kareem responded by laughing and saying that Defendant SANTOS "protects her Latino people" and that he was only the messenger.

41.   As Plaintiff's planned vacation was approaching, Kareem told Plaintiff that Defendant SANTOS was still giving him a hard time.  Kareem told Plaintiff that Defendant SANTOS did not like the fact that Plaintiff had spoken up regarding race discrimination.  Kareem acknowledged that taking time off should not be a problem since it was not a busy time and said "But then again, you are not Hispanic" then laughed.

42.   Kareem suggested that Plaintiff reach out to Human Resources ("HR") regarding taking a leave of absence.

43.   Plaintiff contacted HR who told him that he could not use a leave of absence for vacation but only for qualifying reasons such as illness. When Plaintiff relayed this information to Kareem, Kareem suggested that he contact Chris Rochford ("Rochford"), Assistant Vice President, regarding the matter.

44.   After speaking with Plaintiff, Rochford assured Plaintiff that he would speak to Defendant SANTOS and told him to enjoy his vacation.

45.   On July 31, 2019, Plaintiff traveled to Paris and returned to work approximately four (4) weeks later. Upon his return, Plaintiff received an email advising him to report to the

Community Base Office and was warned that he would receive a disciplinary memorandum for insubordination.

46.   On August 27, 2019, Kareem came to visit Plaintiff to conduct Plaintiff's performance review. During the review, he stated that Plaintiff was 120% over his goal, had no marketing incidents, and for years none of Plaintiff's cases have been referred to Special Investigations Unit, which handles fraud investigations.

47.   Kareem then told Plaintiff that Defendant SANTOS wanted him to give Plaintiff a memo regarding insubordination because Plaintiff had taken time off without formal approval.

48.   Plaintiff asked Kareem whether the two Marketing Representatives who had taken time off without approval had been written up for insubordination. Kareem responded that they had not been written up and reiterated that Defendant SANTOS "protects her Latino people."

49.   Plaintiff complained to Kareem that this was discriminatory treatment. Kareem merely replied that he was only the messenger and warned Plaintiff of negative consequences if he did not sign the disciplinary memorandum.

50.   On or about May 4, 2020, Plaintiff received an email asking that he join a video conference with HR and Rochford.

51.   Upon Plaintiff joining the video conference, Rochford told Plaintiff that he had not improved since he had received a write up and therefore his employment had been terminated.

52.   As a result of Defendants' actions, Plaintiff felt humiliated, degraded, victimized, embarrassed and emotionally distressed.

53.   As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, he suffered severe emotional distress.

54.     As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

55.     Defendants' actions and conduct were intentional and intended to harm Plaintiff.

56.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against the Defendants.

**FIRST CAUSE OF ACTION**
*Race Discrimination in Violation of Title VII*
**(against Defendant HEALTHFIRST)**

57.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

58.     Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's **race**, color, religion, sex, or national origin[.]

59.     As described above, Defendant discriminated against Plaintiff on the basis of his race, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on his race.

60.     As a result of the unlawful discriminatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional

distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

61.  The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
*Retaliation in Violation of Title VII*
**(against Defendant HEALTHFIRST)**

62.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

63.  Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

64.  As described above, Plaintiff engaged in protected activities, including making internal complaints regarding the discrimination of Defendants SANTOS and VARGAS on the basis of Plaintiff's race.

65.  As described above, after Plaintiff engaged in activity protected by Title VII, Defendant took adverse actions against Plaintiff by, *inter alia*, terminating his employment, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

66.  As a result of the retaliatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional

distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

67.    The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### _Race Discrimination in Violation of Section 1981_
**(against all Defendants)**

68.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69.    42 U.S.C. § 1981 states in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

70.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of his race (Black).

71.    Plaintiff was subjected to negative disparate treatment, discrimination, humiliation, embarrassment, adverse employment actions and loss of employment due to his race.

## FOURTH CAUSE OF ACTION
### _Retaliation in Violation of Section 1981_
**(against all Defendants)**

72.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

73.    By the acts and practices described above, Defendants retaliated against Plaintiff for his

opposition to unlawful discrimination under <u>42 U.S.C.</u> §1981.

74. Defendants acted with malice and/or reckless indifference to Plaintiff statutorily protected rights.

75. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

**FIFTH CAUSE OF ACTION**
<u>*Race Discrimination in Violation of the NYSHRL*</u>
**(against all Defendants)**

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. <u>New York State Executive Law</u> §296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

78. As described above, Defendants discriminated against Plaintiff on the basis of his race, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, based on Plaintiff's race.

79. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

80. As a result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional

distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

81.   Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

**SIXTH CAUSE OF ACTION**
*Retaliation in Violation of the NYSHRL*
**(against all Defendants)**

82.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

83.   New York State Executive Law § 296(7) provides that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she filed a complaint, testified, or assisted in any proceeding under this article.

84.   As described above, Plaintiff engaged in protected activities, including making internal complaints regarding the discrimination of Defendants SANTOS and VARGAS on the basis of Plaintiff's race.

85.   As described above, after Plaintiff engaged in activity protected by the NYSHRL, Defendants took adverse actions against Plaintiff by, *inter alia*, terminating his employment, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

86.   As a result of Defendants' retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and

anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

**SEVENTH CAUSE OF ACTION**
*Race Discrimination in Violation of NYCHRL*
**(against all Defendants)**

87.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

88.     The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

89.     As described above, Defendants discriminated against Plaintiff on the basis of his race in violation of the NYCHRL by, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment. As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

90.     As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is

entitled to an award of monetary damages and other relief.

91.     Defendants' unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages.

**EIGHTH CAUSE OF ACTION**
*Retaliation in Violation of NYCHRL*
**(against all Defendants)**

92.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

93.     The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice for an employer "to retaliate or discriminate in any manner against any person because such person has opposed any practices forbidden under this chapter…."

94.     As described above, Plaintiff engaged in protected activities, including making internal complaints regarding the discrimination of Defendants SANTOS and VARGAS on the basis of Plaintiff's race.

95.     As described above, after Plaintiff engaged in activity protected by the NYCHRL, Defendants took adverse actions against Plaintiff by, *inter alia*, terminating his employment, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

96.     As a result of Defendants' retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages

and benefits and other compensatory damages, and other relief.

97.    Defendants' unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages.

## JURY DEMAND

98.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, Section 1981, NYSHRL, and NYCHRL in that Defendants discriminated against Plaintiff on the basis of his race and retaliated against Plaintiff for engaging in protected activity;

B.    Awarding damages to Plaintiff for all damages resulting from Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law claims;

D.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

E.    Awarding Plaintiff punitive damages;

F.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       May 17, 2021

                                    **PHILLIPS & ASSOCIATES,**
                                    **ATTORNEYS AT LAW, PLLC**

                          By:    /s/ Marjorie Mesidor
                                 Marjorie Mesidor, Esq.
                                 Steven R. Filosa, Esq.
                                 *Attorneys for Plaintiff*
                                 45 Broadway, Suite 620
                                 New York, New York 10006
                                 T: (212) 248-7431
                                 F: (212) 901-2107
                                 mmesidor@tpglaws.com
                                 sfilosa@tpglaws.com